# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE STATE OF DELAWARE, )
)
      Plaintiff, )
)
v. ) C.A. NO.: N16C-05-138 AML
)
DA ZHONG WANG, )
)
      Defendant. )

Submitted: July 16, 2019
Decided: October 31, 2019

## MEMORANDUM OPINION

Oliver J. Cleary, Esquire, and Zoe Plerhoples, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for Plaintiff.

Brian T.N. Jordan, Esquire, of JORDAN LAW, LLC, Wilmington, Delaware, Attorney for Defendant.

**LeGrow, J.**

The defendant in this civil racketeering action owned and operated a series of massage parlors across the state. Over the course of 13 months, three different massage therapists at two different locations offered undercover police officers sex in exchange for money. After the third such incident, the defendant criminally was charged and ultimately pleaded guilty to permitting prostitution at his Rehoboth business. During the same time period, the sewer at a third location was clogged with hundreds of used condoms on two separate occasions. Police officers investigating the businesses found that the employees who worked there spoke little to no English and lived in the establishments. Investigating officers also observed sexually suggestive online advertisements for the defendant's massage businesses.

At trial, against this record, the defendant denied knowing that his employees routinely were engaging in prostitution. His testimony strained credulity. After considering the evidence, I find the State proved that the defendant conspired with his employees to offer massage customers sex in exchange for money. I therefore conclude the State proved the defendant civilly is liable for three violations of Delaware's racketeering statute. My reasoning follows.

1

## FACTUAL AND PROCEDURAL BACKGROUND

These are the facts as I find them after trial and after weighing the testifying witnesses' credibility and the exhibits admitted into evidence through their testimony. Da Zhong Wang, the defendant, is a Chinese citizen who formerly operated a handful of massage parlors in Delaware. These establishments included the Relaxed Spa in Rehoboth Beach (the "Rehoboth location"), the Massage Center in Middletown (the "Middletown location"), and Da Wang's Bodyworks in Dover (the "Dover location").

As described more fully below, beginning in late 2013 and extending through 2014, various law enforcement organizations began investigating Wang's businesses for a number of reasons, chief among them a suspicion that the masseuses at the various locations regularly were prostituting themselves during massages. Those investigations culminated in Wang's arrest in December 2014 for Promoting Prostitution and Permitting Prostitution. Wang ultimately pleaded guilty to Permitting Prostitution, a misdemeanor offense.[1] In 2015, the Delaware Board of Massage and Bodywork (the "Board") suspended Wang's certified massage technician license, finding that he violated a number of the Board's laws and regulations.[2] Those violations included not displaying his license, not listing his license number on his business cards, not maintaining appropriate business

[1] Trial Exhibit (hereinafter "TX") 31.
[2] TX 36.

2

records, and not cooperating with the Division of Professional Regulation's investigators.[3] By 2015, Wang had closed all his Delaware locations and moved to New York.

In May 2016, the State filed this action seeking asset forfeiture and civil penalties based on Wang's alleged violation of the Delaware Organized Crime and Racketeering Act[4] (the "RICO Statute"). After discovery had concluded, both parties filed motions for summary judgment. The Court ultimately denied those motions, ruling that disputed issues of material fact precluded judgment as a matter of law in favor of either party.[5] In April 2019, the parties tried a two-day bench trial in this Court solely addressing the issue of whether Wang was liable under the statute. In the event the Court determines Wang is liable, the parties anticipate further proceedings on the issue of remedies. At the conclusion of the trial, the Court allowed the parties to submit post-trial briefs, but determined oral argument was not necessary.

At trial, the State's evidence focused on investigations and evidence from all three locations. The State argues that evidence, considered cumulatively, shows Wang engaged in a pattern of racketeering activity and conspired with his employees to do so. Wang generally denies knowledge of any prostitution

---

[3] *Id.* at 2.
[4] 11 *Del. C.* §§ 1501-1511.
[5] *State v. Wang*, 2018 WL 2202274, at *1 (Del. Super. May 11, 2018).

3

activities at two of the three locations, gives little acknowledgment to his guilty plea to permitting prostitution at the third location, and argues the State's other evidence does not meet its burden of proving racketeering by a preponderance of the evidence.

For the reasons explained below, the State's evidence satisfied its burden of proof in this case. Before delving into the specifics of that evidence, however, I first address my reasons for concluding that Wang's testimony was not credible. I then address the evidence at each of the three locations that are the subject of the State's case. In a nutshell, considered as a whole, the record demonstrates that Wang was aware of and encouraged prostitution at his establishments in order to increase business. His self-proclaimed ignorance was not convincing, and the State has shown that Wang violated three different sections of the RICO Statute.

### A. Wang's Credibility

Wang testified first at trial. He was, on the whole, not a credible witness, as his testimony was inconsistent internally and contradicted by evidence admitted during trial and by the facts to which the parties stipulated before trial. Some of those inconsistencies were minor, but they nonetheless were telling. For example, Wang testified that he emigrated from China and the only places he has lived in the

4

United States are New York, Chicago, Maryland, and Delaware.[6] He represented to the Delaware Division of Professional Regulation, however, that he was licensed to practice massage in California and he also testified that he studied in Boston.[7] Further contradicting himself, Wang testified he studied massage in Boston and Chicago, but his application for a massage license in Delaware listed an institution in California as his place of study.[8] At trial, Wang denied attending that institution.[9]

Other instances of Wang's inconsistencies or prevaricating are more central to the issues in this case. For example, Wang initially denied pleading guilty to Permitting Prostitution or any other prostitution offense, despite documentation proving otherwise.[10] Wang also testified on direct examination that he did not know why his wife, Xiu Juan Zhang, was arrested by Middletown police in January 2014.[11] Wang went so far as to claim that he never discussed this seemingly important event with the woman to whom he was married.[12] On cross-examination, however, in an effort to explain why Xiu Juan Zhang was present at his Dover location after he purportedly fired her for being arrested, Wang testified

---

[6] *State v. Wang*, C.A. No. N16C-05-138 AML (Trial Transcript) (hereinafter "Trial Tr.") (Apr. 22, 2019) 9.
[7] *Id.* at 10; TX 10.
[8] *Compare* Trial Tr. at 10, *with* TX 10.
[9] Trial Tr. at 10.
[10] *Id.* at 43-44. Wang later admitted to pleading guilty to Permitting Prostitution. *See State v. Wang*, C.A. No. N16C-05-138 AML (Trial Transcript) (Apr. 23, 2019) 16-17.
[11] Trial Tr. at 30-34.
[12] *Id.* at 33; *see also id.* at 27-28 (Wang testified he and his wife were married until mid-2015).

that he allowed her to live in that location because she could not return to New York after her prostitution arrest.[13] Compounding this inconsistency, Wang testified that Xiu Juan Zhang's prostitution arrest was one of the reasons the two ultimately divorced.[14] Wang's testimony also was inconsistent regarding how he found prospective employees.[15] Moreover, his testimony about how he paid his employees differed entirely from the statements he gave police during a December 2014 interview.[16]

As a result of these inconsistencies, as well as my observations of Mr. Wang during trial, I have accepted very little of his testimony as either factual or believable. Contrary to Mr. Wang's argument, this Court is not required to accept even his "unrebutted" testimony as credible.[17] Accordingly, the factual background that follows mentions very little about Mr. Wang's version of events, since I have concluded that version largely is counter-factual.

---

[13] *Id.* at 46-47.

[14] *Id.* at 50-51.

[15] *Compare id.* at 16-17 (testifying that everyone he hired he knew personally or was referred by someone he knew personally), *with id.* at 45 (testifying that he also located employees by advertising in a Chinese language newspaper).

[16] *Compare id.* at 17-18 (testifying he paid employees $800-$1000 a month depending on the amount of work they performed and customer feedback), *with State v. Wang*, C.A. No. N16C-05-138 AML (Pretrial Stipulation) (Mar. 15, 2019) ¶ 2(x) ("The Defendant admitted to the police that he received $40 from the therapists for every massage he provided. . . . [and] that he paid the therapists the remaining $20 they received.").

[17] *See* Def.'s Answering Br. 25; *Wright v. State*, 25 A.3d 747, 754 (Del. Aug. 1, 2011) ("As the trier of fact, it was for the trial judge to determine whether [the testimony was] credible.").

## B. The Middletown investigation and findings

In summer 2013, Middletown Police Detective Timothy Hoffecker began investigating Wang's Middletown location for possible prostitution activity.[18] Police officers conducted surveillance of the location during the day and at night, and Hoffecker also conducted an online search of the business based on the phone number associated with the location.[19] During the surveillance, Hoffecker observed that the Middletown location's windows completely were covered with curtains and posters.[20] During his internet search, Hoffecker found several advertisements associated with the Middletown location's phone number, including advertisements on websites for people searching for escorts. Hoffecker also observed that many of the advertisements showed pictures of partially clothed Asian females.[21] Although the advertisements all listed the Middletown location's phone number, at least one of the advertisements referred to additional locations in Smyrna and Dover.[22]

Middletown police then conducted an undercover investigation using a Delaware State Police officer. That officer, who had conducted at least 50 prostitution investigations, went to the Middletown location on November 18,

---

[18] Trial Deposition of Timothy Hoffecker (hereinafter "Hoffecker Dep.") 4-5.
[19] *Id.* at 6.
[20] *Id.* at 6-7.
[21] *Id.* at 7-10.
[22] *Id.* at 10-11. Although it was not the focus of the State's evidence, Wang also owned a massage establishment in Smyrna during the time of the Middletown investigation. Pretrial Stipulation at ¶ 2(c).

7

2013 and paid for a massage. At the end of the massage, the masseuse instructed the officer to turn over, and she then grabbed his genitals.[23] The two discussed the officer paying additional money for sexual stimulation and agreed upon a price of $30 before the officer stated he did not have enough money.[24] The masseuse encouraged him to come back the next day "and pay the rest and finish."[25] The undercover officer left the premises and immediately reported the interaction to Hoffecker.

Middletown police obtained and executed a search warrant for the premises on November 18, 2013. When the warrant was executed, two adults were working at the establishment: Wang and Ms. Chunyan Li.[26] The undercover officer positively identified Ms. Li as the masseuse who had given him a massage and offered to perform sexual acts in exchange for money.[27] In addition, Detective Hoffecker observed several signs that both Ms. Li and Mr. Wang were living on the premises. The searching officers found more than $2,000 in cash among Ms. Li's belongings. Hoffecker arrested Ms. Li for prostitution. During a post-*Miranda* interview, Ms. Li denied engaging in prostitution. She also explained that

---

[23] Trial Deposition of Jason M. Russo (hereinafter "Russo Dep.") 6-7. Wang had a standing hearsay objection at trial regarding the admissibility of any of the statements the masseuses made during the massage or after their arrest. None of the masseuses testified. As explained in the Analysis section below, those statements are not hearsay because they are coconspirator statements under Del. Unif. R. of Evid. 801(d)(2)(E).
[24] Russo Dep. at 6-7, 13-14.
[25] *Id.* at 7.
[26] Hoffecker Dep. at 11-12.
[27] *Id.* at 14-15.

she worked for Mr. Wang and he received $40 for each massage she performed, while she retained the remainder along with any tip that was paid.[28] Mr. Wang described a similar arrangement in his interview with the police, although he testified to an entirely different compensation arrangement at trial.[29] Mr. Wang also told police that his employee handbook specifically prohibited masseuses from engaging in any "illegal activity."[30]

On January 9, 2014, another undercover police officer purchased a massage at the Middletown location and experienced a similar interaction. At the conclusion of the massage, the masseuse, Ms. Xiu Juan Zhang ("Ms. Juan Zhang"), who was married to Mr. Wang, held the officer's hand while staring at his genitals.[31] When the officer asked if she wanted to do anything else, she told the officer it was up to him, and the two negotiated for a period of time regarding a price for additional sexual acts. As before, when the officer informed the masseuse that he did not have enough money, she advised him to bring the extra $50 with him next time.[32] Although much of their communication was non-verbal, the officer testified he had no doubt in his mind that Ms. Juan Zhang was offering to perform a sexual act with him in exchange for money.[33]

---

[28] *Id.* at 15-16.
[29] Trial Tr. at 17-18, 48; Hoffecker Dep. at 17-18.
[30] Hoffecker Dep. at 18.
[31] Trial Deposition of Michael A. Terranova, Jr. (hereinafter "Terranova Dep.") 11-12.
[32] *Id.* at 12-14.
[33] *Id.*

9

Again, Middletown police obtained a search warrant and executed it the same day as the undercover operation. When they arrived, Wang and Ms. Juan Zhang were present, and the undercover officer identified Ms. Juan Zhang as the masseuse who solicited money in exchange for sex.[34] Both Wang and Ms. Juan Zhang had a substantial amount of cash in their possession and both appeared to be living at the premises.[35] Ms. Juan Zhang was arrested for prostitution. Mr. Wang was interviewed, denied any knowledge regarding his employee engaging in prostitution, and was not charged with any crime.

## C. Operations at the Dover location

Although no prostitution investigation specifically was conducted at the Dover location, the State presented evidence at trial that supported a conclusion that sexual acts regularly were occurring on the Dover premises and that Wang was aware of that fact. Specifically, in April 2014, employees from the Dover location contacted Dover Public Works about a clogged sewer line. The Public Works department ultimately discovered that the source of the problem was a large number of unwrapped condoms clogging the portion of the sewer line that exclusively was used by Wang's Dover business.[36] It appeared those condoms had been flushed down the toilet.[37] Dover Fire Marshal Timothy Mullaney personally

---

[34] *Id.* at 14-15; Hoffecker Dep. at 20-21.
[35] Hoffecker Dep. at 20-23.
[36] Trial Tr. at 115-18.
[37] *Id.* at 117.

observed the clog and testified that hundreds to thousands of loose condoms appeared to have been flushed down the toilet.[38]

In December 2014, the Dover location's sewer line clogged again. That clog also was caused by hundreds of loose condoms.[39] Mullaney and Steven Getek, an inspector for the Division of Public Regulation, then inspected the Dover premises.[40] There, Mullaney observed two women cooking a meal and apparently living at the property. Mullaney also observed several Dover municipal code violations, which prompted him to close the business.[41] Getek observed and photographed personal clothing hanging in a makeshift closet, the makings of a kitchen, and other personal belongings indicating people were living on the property.[42] Xiu Juan Zhang was one of the two women at the business during the inspection, even though Wang claimed to have fired her after her arrest several months earlier. When asked about her presence, however, Wang explained to police that Xiu Juan Zhang "must have just stopped by."[43]

### D. The Rehoboth investigation and arrests

Around the same time that Mullaney and Getek were investigating the Dover location, Delaware State Police were investigating possible prostitution at the

---

[38] *Id.* at 116-17.
[39] *Id.* at 117.
[40] *Id.* at 119-20.
[41] *Id.* at 120-23.
[42] *Id.* at 66-67; TX 24.
[43] Trial Deposition of Dallas Reynolds (hereinafter "Reynolds Dep.") 16; Trial Tr. at 125-26.

11

Rehoboth location.[44] Surveillance of the location revealed customers actively entering and leaving the business throughout the day.[45] On December 4, 2014, Delaware State Police conducted an undercover operation at the Rehoboth location.[46] Posing as a customer, a police officer purchased an hour massage. During the massage, the masseuse offered to perform a sexual act on the officer for additional money. The officer and the masseuse then discussed what types of sexual acts she was willing to perform and for what amount.[47] The officer ultimately declined any additional "services," and left the premises.[48]

Delaware State Police returned later that day with a search warrant for the premises. The undercover officer identified the masseuse who solicited him.[49] That woman, later identified as Meizhu Zhang, was arrested and charged with prostitution. Getek's investigation revealed she previously had been convicted of prostitution in Massachusetts.[50]

The officers participating in the search found Meizhu Zhang's backpack, which contained a "large amount" of condoms and a large sum of money.[51]

---

[44] Trial Deposition of Larry Smith (hereinafter "Smith Dep.") 5-6.
[45] Reynolds Dep. at 5-7; Smith Dep. at 6-7.
[46] Smith Dep. at 5-6.
[47] Id. at 7-10.
[48] Id. at 9-10.
[49] Id.; Trial Tr. at 10-11.
[50] Trial Tr. at 75-76; TX 25-26.
[51] Trial Tr. at 63.

Delaware State Police also observed indications that people were living in the establishment, including the presence of a makeshift kitchen.[52]

On December 17, 2014, Getek, Mullaney, and Delaware State Police Corporal Dallas Reynolds interviewed Wang in Dover with the assistance of a Chinese interpreter.[53] During the interview, Wang indicated he lived in New York and visited his businesses every few days, although he was unable to provide a New York address.[54] Wang also confirmed that his female employees lived in his businesses.[55]

After the interview, Wang was arrested and charged with Promoting Prostitution, a Class E felony, and Permitting Prostitution, a Class B misdemeanor.[56] On August 19, 2015, Wang pleaded guilty to Permitting Prostitution and was sentenced by the Superior Court in Sussex County.[57] By pleading guilty, Wang admitted that he had "possession or control of premises which [he knew were] being used for prostitution purposes[] [and] fail[ed] to halt or abate such use within a reasonable period of time."[58]

---

[52] Id.
[53] Reynolds Dep. at 13-14.
[54] Id. at 15; Trial Tr. at 82-83.
[55] Trial Tr. at 83.
[56] 11 Del. C. §§ 1352, 1355; see TX 31.
[57] TX 31.
[58] 11 Del. C. § 1355.

13

## ANALYSIS

The State contends the evidence adduced at trial demonstrates that Wang was operating a criminal enterprise in violation of Delaware's RICO Statute. That statute defines the following as violations:

§ 1503 Violations.

(a) It shall be unlawful for any person employed by, or associated with, any enterprise to conduct or participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity or collection of an unlawful debt.

(b) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property, of any nature, including money.

(c) It is unlawful for any person who has received any proceeds derived, directly or indirectly, from a pattern of racketeering activity in which such person has participated, to use or invest, directly or indirectly, any part of such proceeds or any proceeds derived from the investment or use thereof, in the acquisition of any interest in, or the establishment or operation of, any enterprise or real property.

(d) It is unlawful for any person to conspire or attempt to violate any of the provisions of subsection (a), (b) or (c) of this section.[59]

The State filed seven racketeering counts against Wang: one for each of the three acts of prostitution committed by his employees, one for his own Permitting Prostitution conviction, and one for each alleged violation of 11 *Del. C.* § 1503(a)-(c). For the reasons set forth below, I conclude the State has proved by a

---

[59] *Id.* § 1503.

14

preponderance of the evidence that Wang is liable for three violations of the RICO Statute.

## I. The State proved that Wang conspired with his employees to engage in prostitution at his Delaware establishments.

In his post-trial brief, Wang focuses on whether the State proved by a preponderance of the evidence that he conspired with the massage therapists at the Middletown location to engage in prostitution. Wang reasons that if the State cannot prove such a conspiracy, the massage therapists' statements are inadmissible hearsay. Moreover, Wang argues that without those statements, the State cannot prove the necessary number of predicate acts to support their RICO claims.

Wang argues the massage therapists' statements to the undercover officers during the massage, as well as their statements when interviewed by police, constitute hearsay and therefore are not admissible against Wang in this case.[60] The State, however, contends the statements are not hearsay because Wang and the therapists conspired to engage in a pattern of prostitution during massages performed at Wang's various businesses.

---

[60] Wang timely objected to the evidence at trial. Because the trial was a bench trial, and because the Court is permitted to consider the statements themselves in making the preliminary determination of admissibility under Rule 801, the Court allowed the State to admit the evidence at trial and reserved decision on admissibility until the Court had heard all the evidence and considered the parties' post-trial briefs. This constitutes my decision regarding the admissibility of the statements.

15

Delaware Rule of Evidence 801 ("Rule 801"), like its federal counterpart, identifies statements that are "not hearsay." Those statements include, pertinently, certain statements by a party's coconspirator. Specifically, Rule 801(d)(2)(E) states:

> A statement that meets the following conditions is not hearsay: . . . (2) *An Opposing Party's Statement.* The statement is offered against an opposing party and: . . . (E) was made by the party's coconspirator during and in furtherance of the conspiracy; provided that the conspiracy has first been established by a preponderance of the evidence to the satisfaction of the court.[61]

In order to admit the statements under Rule 801(d)(2)(E), the State must show by a preponderance of the evidence that (1) a conspiracy existed; (2) the coconspirator and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy.[62] In deciding whether the State has met its burden, the Court may consider the statements themselves.[63]

The evidence the State presented establishes by a preponderance of the evidence that Wang and his employees conspired to solicit money from customers in exchange for various sexual acts.[64] Under Delaware law, the State was required

---

[61] D.R.E. 801(d)(2)(E).

[62] *Reyes v. State*, 819 A.2d 305, 312 (Del. 2003); *see also Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987).

[63] *Bourjaily*, 483 U.S. at 177-81; *Lloyd v. State*, 534 A.2d 1262, 1264-65 (Del. 1987); *see also* D.R.E. 104(a).

[64] Proof by a preponderance of the evidence means proof that something is more likely true than not true. In other words, something is proved by a preponderance of the evidence when the

to prove that Wang and each of the massage therapists agreed to commit an unlawful act and one or more of them committed an overt act in pursuit of that conspiracy.[65] Here, the statements the massage therapists made corroborate other evidence that Wang knew prostitution was occurring at his establishments and that he encouraged or allowed it to continue to drive customers to his businesses.

Although Wang endeavored at trial to paint the massage therapists as rogue employees who deceived him so they might earn extra money on the side, the evidence does not support that conclusion. Wang allowed his employees to live in the locations where they worked, and he lived there with them at times. The advertisements for those locations included the Middletown phone number alongside pictures of scantily clad, young Asian women. Police officers observed those advertisements on websites targeting people searching for escorts. The therapists' statements and nonverbal communications were very similar, suggesting an effort by Wang (the common denominator between the three therapists) to teach methods of solicitation. Wang did not conduct any background checks on his employees, even after the first prostitution arrest, and allowed Xiu Juan Zhang to continue to live and work at his Dover location even after she had

---

evidence in favor of the factual finding has the more convincing or greater force than the evidence against it. *See MRPC Christiana LLC v. Crown Bank*, 2017 WL 6606587, at *5-6 (Del. Super. Dec. 26, 2017); *Bank of New York Mellon v. Henry*, 2017 WL 3902631, at *1 (Del. Super. Sept. 5, 2017); *Cuonzo v. Shore*, 2008 WL 193298, at *4 (Del. Super. Jan. 24, 2008).

[65] *See* 11 *Del. C.* § 512; *Holland v State*, 744 A.2d 980, 982 (Del. 2000); *State v. Wallace*, 214 A.2d 886, 889-90 (Del. 1963).

been arrested for prostitution. Wang took no steps to curtail prostitution, even after the two Middletown arrests and the April 2014 sewer clog at the Dover location. Instead, he pleaded guilty to knowing that prostitution was occurring at the Rehoboth location six months later and not taking any steps to prevent it from happening.

Although the State did not offer evidence that Wang directly received any proceeds from the massage therapists' prostitution, it is logical and reasonable to infer from the evidence that he encouraged that activity in order to increase the number of customers who frequented his establishments. Even if those customers paid the massage therapists directly for sexual services, and even if the therapists retained all those additional funds, Wang benefited from the increase in sales of massage services. Moreover, Wang himself testified at trial that he collected all the money customers paid for their massages and then paid his employees a monthly amount based on their performance and on customer satisfaction. That evidence is more persuasive than Wang's rote insistence that he trained his employees not to commit any vaguely defined "illegal acts."

Wang repeatedly emphasizes in his post-trial brief that neither he nor the therapists ever were charged with conspiracy, and that Detective Hoffecker, the police officer leading the Middletown investigation, testified that if someone is not charged with a crime, it is safe to assume that Hoffecker concluded there was no

18

probable cause to support an arrest.[66] Emphasizing that probable cause is a lower standard than preponderance of the evidence, Wang argues that Hoffecker's conclusion that he did not have probable cause to charge Wang with conspiracy necessarily requires a finding that no conspiracy was proved at trial. According to Wang, "the State has provided no evidence that bridges the gap between Mr. Hoffecker's finding that no probable cause existed to charge Mr. Wang with any crime related to the Middletown investigation and the State's current burden to show it is more likely than not that Mr. Wang committed predicate acts of racketeering . . . [or] that a conspiracy existed . . . ."[67] But, as explained above, Detective Hoffecker lacked the complete context of Wang's involvement, which became clear only after the ensuing investigations of the Dover and Rehoboth locations. Accordingly, what Detective Hoffecker believed the evidence showed in November 2013 and January 2014 is not indicative of what the State proved at trial.

The evidence admitted during trial and summarized above satisfies the State's burden to prove that a conspiracy existed, that Wang and each of the three massage therapists (most likely along with unknown others) conspired to engage in prostitution, and that Wang profited from that arrangement.[68] It therefore is plain

---

[66] *See* Answering Br. at 3-4, 18; *see also* Trial Tr. 28-30.

[67] Answering Br. at 18.

[68] It may well be that the massage therapists were not willing participants in this conspiracy and that they were the victims of sex trafficking. That issue was not before the Court in this trial and

that the statements the therapists made to solicit the undercover police officers were in furtherance of that conspiracy. The State also argues the statements the therapists gave to the police after their arrest are admissible under Rule 801(d)(2)(E). Generally, a conspiracy ends when its principal objective is accomplished.[69] After that point, statements made by one member of the conspiracy are not admissible under Rule 801(d)(2)(E) unless "evidence is introduced indicating that the scope of the original agreement included acts taken to conceal the criminal activity."[70]

The State also satisfied that additional evidentiary burden. First, the notion that the conspiracy between Wang and the massage therapists ended when each individual act of sexual solicitation was complete is contrary to the evidence. The conspiracy, as I have explained above, involved an agreement to solicit money from massage customers in exchange for performing sexual acts. That conspiracy continued as long as Wang employed the women and the completion of one particular act of prostitution did not accomplish the conspiracy. Second, there was evidence that the therapists attempted routinely to conceal their activities by using nonverbal communications and by attempting to determine whether a customer

---

therefore the evidence does not permit a conclusion either way. Resolving that issue is immaterial for purposes of the pending RICO claims, but the Court would be remiss not to recognize the possibility that Wang used his position as the employees' boss and landlord to force them into prostitution.

[69] *Reyes*, 819 A.2d at 312.

[70] *Id.*

might be an undercover police officer. Therefore, the conspiracy was not over when each individual therapist was arrested, and even if the conspiracy was complete, the agreement included taking efforts to hide the nature and extent of the activity. Accordingly, although they only marginally are relevant, I conclude the therapists' statements to police after their arrests also were admissible under Rule 801(d)(2)(E).

In short, the therapists' statements were admissible, and those statements support a finding that Chunyan Li and Xiu Juan Zhang engaged in the predicate acts charged by the State.[71] The police officers gave credible testimony regarding those therapists' conduct during the massages, and I conclude that Ms. Li and Ms. Juan Zhang offered to perform sexual acts on the officers in exchange for money. As explained below, those predicate acts form part of the basis for a finding that Wang civilly is liable under the RICO Statute.

## II. The State proved that Wang civilly is liable for three violations of the RICO Statute.

As explained above, the RICO Statute establishes civil and criminal liability for persons participating in an "enterprise" that is engaged in a "pattern of racketeering

---

[71] Wang does not dispute that Meizhu Zhang and Wang engaged in predicate acts at the Rehoboth location, but he argues those criminal convictions only were one predicate act, not two, because the charges arose from a single event and are "closely related and connected in point of time and place." *See* Answering Br. at 27. Although I agree that those two convictions only constitute one predicate act, that conclusion does not aid Wang's case because the two Middletown incidents of prostitution are two additional predicate acts, thereby satisfying that portion of the statute.

21

activity." An "enterprise," according to the statute, includes "any individual, sole proprietorship, partnership, corporation, trust or other legal entity; and any union, association or group of persons associated in fact, although not a legal entity."[72] The statute further defines a "pattern of racketeering activity" as:

> 2 or more incidents of conduct:
>
> a. That:
>
>> 1. Constitute racketeering activity;
>>
>> 2. Are related to the affairs of the enterprise;
>>
>> 3. Are not so closely related to each other and connected in point of time and place that they constitute a single event; and
>
> b. Where:
>
>> 1. At least 1 of the incidents of conduct occurred after July 9, 1986;
>>
>> 2. The last incident of conduct occurred within 10 years after a prior occasion of conduct; and
>>
>> 3. As to criminal charges, but not as to civil proceedings, at least 1 of the incidents of conduct constituted a felony under the Delaware Criminal Code, or if committed subject to the jurisdiction of the United States or any state of the United States, would constitute a felony under the Delaware Criminal Code if committed in the State.[73]

"Racketeering" separately is defined as engaging in, attempting to engage in, or conspiring to engage in or to solicit, coerce, or intimidate another person to engage in any felony under Delaware law or any misdemeanor under, *inter alia*, Chapter 5, Title 11 relating to prostitution.[74] The case law interpreting both the RICO Statute

---

[72] 11 *Del. C.* § 1502(3). The word includes both "illicit as well as licit" enterprises. *Id.*
[73] *Id.* § 1502(5).
[74] *Id.* § 1503(9).

and its federal counterpart further explain the elements of both the "enterprise" and "pattern" portions of the State's burden.[75]

### A. Wang's massage businesses constituted an "enterprise" under the RICO Statute.

Wang's post-trial brief does not address whether the businesses were an "enterprise" for purposes of the RICO Statute. Even if Wang contested that element, it is plain from the record that the State carried its burden in this regard. Wang incorporated a series of massage businesses across the state and conducted those businesses as legitimate, legal organizations with a separate corporate existence. Although those massage businesses were not a "chain" in the traditional sense of the word, they all were controlled and run by Wang, who used the same sources to solicit employees, the same criteria to set employee pay, and the same training manual and practices to govern those employees.

Those massage businesses were, if nothing else, an "association-in-fact enterprise." Such an enterprise is demonstrated when the State proves: (i) that the enterprise was an ongoing organization with a framework for making and carrying out decisions; (ii) the associates functioned as a continuing unit; and (iii) the enterprise was distinct from the pattern of racketeering in which it was engaged.[76] Here, Wang's massage parlors operated as legitimate businesses with storefronts,

---

[75] *See Stroik v. State*, 671 A.2d 1335, 1340 (Del. 1996) ("Since the Delaware RICO statute is essentially an adaptation of its federal counterpart, reliance on federal precedent in this limited factual setting is warranted.").

[76] *Id.* at 1341; *see also U.S. v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011).

some level of record-keeping, customer incentives, and employees. Wang traveled between the businesses, supervising and training the employees. Notwithstanding the ongoing criminal conduct occurring during massages, the locations otherwise functioned as a legitimate business with Wang at the helm.[77] The State also proved Wang and his employees functioned as a continuing unit, occupied identifiable positions within the organization, and performed assigned responsibilities.[78] Finally, the enterprise existed separate and apart from the pattern of racketeering activity, and the business could have conducted its affairs without committing the predicate acts.[79]

### B. Wang and his employees engaged in a pattern of racketeering activity.

Although he does not challenge the existence of an enterprise, Wang does argue the State failed to prove that the enterprise engaged in a pattern of racketeering activity. Wang first argues the State did not sufficiently prove that any prostitution occurred at the Middletown location because he contends the massage therapists' statements were not admissible under Rule 801(d)(2). That argument is addressed and rejected above. Wang also separately argues the State did not prove that Wang knew what his employees were doing, and Wang argues it equally is plausible they engaged in this activity without his knowledge or consent.

[77] *See Stroik*, 671 A.2d at 1341.
[78] *Id.*
[79] *Id.*

Wang's argument is unpersuasive. I already concluded that the State proved Wang conspired with his massage therapists to engage in a pattern of prostitution, and the facts supporting that conspiracy dispel Wang's contention that he merely was an innocent bystander unaware of his employees' criminal scheme. The State's evidence, considered as a whole, demonstrates a pattern of racketeering activity at Wang's three locations.

In order to prove such a pattern, the State must prove a "relationship" between the predicate acts and "the threat of continuing activity."[80] With respect to relatedness, the predicate acts must be something more than isolated incidents or sporadic activity in order to satisfy the requirement of a "pattern."[81] Relatedness may be proved in a variety of ways, including criminal acts "that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[82] Here, the three undercover operations revealed the massage therapists engaged in similar methods of soliciting clients, offered to exchange sex for similar amounts of money, and had similar relationships with Wang. All the therapists lived at Wang's businesses and were compensated by him in the same way. Those similarities, combined with the circumstantial evidence of ongoing acts of

---

[80] *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).
[81] *Id.* at 237-39; *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985).
[82] *H.J. Inc.*, 492 U.S. at 240.

25

prostitution, including the condoms clogging the sewer and the sexually suggestive online advertisements, satisfies the relatedness requirement.

Similarly, the nature of these acts of prostitution and the manner in which the solicitations took place establishes there was a threat of continuity had the State not taken steps to shut down Wang's businesses. Between November 2013 and December 2014, therapists offered sex in exchange for money to three different undercover police officers. Again, coupled with the State's other circumstantial evidence, prostitution appeared to be Wang's regular way of doing business, and the predicate acts carried a specific threat of repetition extending indefinitely into the future.[83]

### C. The State proved that Wang violated Sections 1503(a), 1503(b), and 1503(c) of the RICO Statute.

The State's complaint against Wang alleges seven violations of the RICO Statute. Four of the seven counts relate to each of the four predicate acts the State identifies (the three acts of prostitution and Wang's conviction for Permitting Prostitution). The State does not identify any case law suggesting each individual predicate act constitutes a separate RICO violation. Rather, as I read the Act, those predicate acts form the "pattern of racketeering activity," and the State may seek a judgment based on each violation of Section 1503 the State successfully proves.[84]

---

[83] *See id.* at 242.
[84] 11 *Del. C.* § 1503, titled "Violations"; *id.* § 1505(b) ("The Attorney General may institute proceedings under § 1503 of this title and in addition for damages, civil forfeiture and a civil

In my view, based on the factual findings set forth herein, the State proved that Wang committed three violations of Section 1503. First, Wang was associated with the enterprise discussed above and conducted its affairs through a pattern of racketeering activity.[85] Second, Wang, through that pattern of racketeering activity and the proceeds derived therefrom, maintained control of his businesses and the real and personal property associated with those businesses.[86] Finally, Wang received proceeds derived from the pattern of racketeering activity in which he participated, and he used those proceeds to operate his enterprise, including paying for the employees, providing them housing, and otherwise conducting his various massage businesses.[87]

## CONCLUSION

For the reasons set forth above, the Court finds Wang liable for three violations of the RICO Statute. The parties shall confer and provide the Court a status update within 30 days regarding their proposed schedule to address the damages and penalties portion of the case. **IT IS SO ORDERED.**

---

penalty of up to $100,000 for each incident of activity *constituting a violation of this chapter*.") (emphasis added).

[85] *Id.* § 1503(a).

[86] *Id.* § 1503(b).

[87] *Id.* § 1503(c).